# EXHIBIT 1

CIRCUIT COURT SUMMONS (out of state defendant) - SCR 101(b)(3)                    2332 (Rev 3/24)

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## DU PAGE COUNTY, ILLINOIS

PALO ALTO NETWORKS, INC.

_____

PLAINTIFF

vs

KEYUR TRIVEDI and CHRISTOPHER
SCHUMM,

_____

DEFENDANT

2025CH000215
_____
**CASE NUMBER**

**SUMMONS**
**FOR OUT OF STATE DEFENDANT**

File Stamp Here

☒ ORIGINAL  ☐ ALIAS

To each defendant: Christopher Schumm, 2220 Forest Glen Rd., Silver Spring, MD 20910
                   Name                                    Address

You are summoned and required to appear, either in person or remotely, before this Court at the DuPage County Judicial Center,
505 North County Farm Road, Wheaton, Illinois on October 14, 2025  9:00 am      2007      to answer the
                                              Date              Time         Courtroom
complaint of the plaintiff(s), a copy of which is hereto attached. If you fail to do so, a judgment by default may be taken against
you for the relief asked in the complaint, no default shall be taken until the expiration of thirty (30) days after service.

You are a party to a civil matter. Read all documents attached to this Summons. Typically, this means you must file an official
document with the court, within the time stated on this Summons, called an "Appearance" and a document called an "Answer/
Response". Note the Answer/Response is not required for small claims and eviction cases unless ordered by the court. If these
documents are not filed on time the court may decide the case without hearing from you, and you could be held in default and lose
the case.

Documents must be filed electronically with the court (e-filed), which requires an account be created with an Illinois e-filing
service provider, see ilcourts.info/efiling. If you are unable to e-file, you can obtain an exemption that allows filing in-person or by
mail.

You may be charged filing fees. If you are unable to pay them, you can file an Application for Waiver of Court Fees. A judge will
rule on your eligibility for a fee waiver.

The court may allow you to attend the first court date in this case by videoconference. Visit 18thjudicial.org to find the Zoom link
for this case on your court date. Contact the Circuit Court Clerk's office at (630)407-8700 for more information.

Need more help? Visit ilcourthelp.gov or call/text Illinois Court Help at (833)411-1121 for information about going to court,
including how to fill out legal documents. Also, free legal information and referrals are available at illinoislegalaid.org. Document
forms referred to in this Summons can be found at 18thjudicial.org or ilcourts.info/forms.

¿Necesita ayuda? Llame o envie un mensaje de texto a Illinois Court Help al (833)411-1121, o visite ilcourthelp.gov para obtener
información sobre los casos de la corte y cómo completar y presentar formularios.

To the Officer:
This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and
fees, if any, immediately after service and not less than three (3) before the date of appearance. If service cannot be made,
this summons shall be returned so endorsed.

Date of Service: _____
To be inserted by officer on copy left with Defendant or other person.

Name:  Tiffany Fordyce                        ☐ Pro Se

DuPage Attorney Number: 27725

Attorney for:  Plaintiff, Palo Alto Networks, Inc.

Address:  GT, 360 N. Green St., Ste.1300

City/State/Zip:  Chicago, IL 60607

Telephone Number: 312-456-8400

Email:  FordyceT@gtlaw.com

WITNESS: **CANDICE ADAMS,** Clerk of the Eighteenth
Judicial Circuit Court, and the seal thereof, at
Wheaton, Illinois.

9/9/2025 4:42 PM

DATED _____

_Candice Adams_  BC
_____
the Eighteenth Judicial Circuit

**NOTICE**

Personal service state (Code of Procedure section 5/2-208). Insert return date not less than forty 40 days nor more than sixty (60) days from the
date of issuance.

**CANDICE ADAMS, CLERK OF THE 18TH JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS**

(Rev 3/24)

## SUMMONS RETURN

I certify that I served this summons on defendant as follows:

☐   (a)   **Individual - personal:**
By leaving a copy and a copy of the complaint with each individual personally.

☐   (b)   **Individual - abode:**
By leaving a copy and a copy of the complaint at the usual place of abode of each individual with a person of the family, of the age of 13 years or upwards, informing that person of the contents of the summons, and also by sending a copy of the summons and the complaint in a sealed envelope with postage fully prepaid, addressed to each individual at the usual place of abode.

☐   (c)   **Corporate:**
By leaving a copy and a copy of the complaint with the registered agent, officer, or agent of each corporation.

☐   (d)   Other Service: _____

☐   (e)   Unable to Serve: _____

| | |
|---|---|
| Name of Defendant _____ | Name of Defendant _____ |
| Name of Person Summons Given to _____ | Name of Person Summons Given to _____ |
| Sex _____ Race _____ Approx. Age _____ | Sex _____ Race _____ Approx. Age _____ |
| Place of Service_____ | Place of Service_____ |
| City/State _____ | City/State _____ |
| Date of Service _____ Time _____ | Date of Service _____ Time _____ |

Special Process Server of _____

By _____ Illinois License Number _____

Sheriff of_____ County

By _____ Deputy Badge Number _____

Sheriff's Fees

    Service and Return ........................................................$ _____

    Miles _____ ........................................................$ _____

    **Total** ........................................................$ _____

DEMAND FOR A JURY TRIAL                                                     2123 (Rev. 1/23)

**STATE OF ILLINOIS**  **UNITED STATES OF AMERICA**  **COUNTY OF DU PAGE**
**IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT**

| | | |
|---|---|---|
| PALO ALTO NETWORKS, INC., | **2025CH000215** | Candice Adams<br>e-filed in the 18th Judicial Circuit Court<br>DuPage County<br>ENVELOPE: 34367287<br>2025CH000215<br>FILEDATE: 9/9/2025 1:33 PM<br>Date Submitted: 9/9/2025 1:33 PM<br>Date Accepted: 9/9/2025 2:43 PM<br>KB |
| PLAINTIFF / PETITIONER | **CASE NUMBER** | |
| VS | | |
| KEYUR TRIVEDI and CHRISTOPHER SCHUMM, | | |
| DEFENDANT / RESPONDENT | | File Stamp Here |

## JURY DEMAND

TO: **CANDICE ADAMS,** Clerk of the Eighteenth Judicial Circuit Court

The ☒ Plaintiff/Petitioner         in the above entitled cause demands a jury for the trial of said cause.
        ☐ Defendant/Respondent

This matter should be tried by a  ☐ jury of six
                                  ☒ jury of twelve

                                        PALO ALTO NETWORKS, INC.
                                        Printed Name(s) of Parties Demanding Jury

                                        /s/ Tiffany S. Fordyce
                                        Signature of Attorney/Pro Se

Name:    **Tiffany S. Fordyce**                    ☐ Pro Se
DuPage Attorney Number: **27725**
Attorney for:  **Plaintiff, Palo Alto Networks, Inc.**
Address: **Greenberg Traurig, 360 N. Green St., Ste. 1300**
City/State/Zip: **Chicago, IL 60607**
Telephone Number: **312-456-8400**
Email:    **FordyceT@gtlaw.com**

**CANDICE ADAMS, CLERK OF THE 18th JUDICIAL CIRCUIT COURT**
**WHEATON, ILLINOIS 60187-0707**

Candice Adams
e-filed in the 18th Judicial Circuit Court
DuPage County
ENVELOPE: 34367287
2025CH000215
FILEDATE: 9/9/2025 1:33 PM
Date Submitted: 9/9/2025 1:33 PM
Date Accepted: 9/9/2025 2:43 PM
KB

**IN THE CIRCUIT COURT OF DUPAGE COUNTY**
**ILLINOIS COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| **PALO ALTO NETWORKS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Case. No. <u>2025CH000215</u> |
| **v.** | ) |
| | ) |
| **KEYUR TRIVEDI and** | ) |
| **CHRISTOPHER SCHUMM,** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff PALO ALTO NETWORKS, INC., by and through its attorneys, Greenberg Traurig, LLP, for its Complaint ("Complaint") against Defendants KEYUR TRIVEDI and CHRISTOPHER SCHUMM states as follows:

### PARTIES

1.      Plaintiff Palo Alto Networks, Inc. ("Palo Alto") is a Delaware corporation with a principal place of business in Santa Clara, California.

2.      Defendant Keyur Trivedi ("Mr. Trivedi") is a natural person who resides in DuPage County, Illinois.

3.      Defendant Christopher Schumm ("Mr. Schumm," and collectively with Mr. Trivedi, "Defendants") is a natural person who resides in Montgomery County, Maryland.

### JURISDICTION AND VENUE

4.      The Court has jurisdiction over Palo Alto's claims against Mr. Trivedi because Mr. Trivedi is an individual who resides and is a citizen of the State of Illinois and because the wrongful

1

conduct out of which a substantial portion of Palo Alto's claims against Mr. Trivedi arise occurred within the State of Illinois.

5.      The Court has jurisdiction over Mr. Schumm because the wrongful conduct out of which a substantial portion of Palo Alto's claims against Mr. Schumm arise occurred within the State of Illinois.

6.      Venue is proper in the Circuit Court of DuPage County because a substantial portion of the conduct and acts out of which Palo Alto's claims arise took place in DuPage County.

## FACTUAL ALLEGATIONS

7.      Palo Alto is a world-leading technology company that provides cybersecurity products and services.

8.      The cybersecurity industry is a fast-paced and rapidly evolving sector in which highly sophisticated firms compete to deploy new technologies at lower prices to retain and grow market share, a key industry metric.  For this reason, Palo Alto, as a market leader, places great importance in maintaining the confidentiality of its customer lists, sales strategies, pricing and discount strategies, marketing materials, and other proprietary sales information (collectively, the "Proprietary Information").  The Proprietary Information is not generally known within the cybersecurity industry, or to the public.

9.      Specifically, Palo Alto requires new employees to execute standalone contracts affirming the competitively sensitive nature of the Proprietary Information, creating obligations relating to its use or disclosure, and providing for the return of Proprietary Information upon termination. Additionally, Palo Alto limits access to the Proprietary Information internally to only those employees who have a business need for such information, and it employs information

2

security measures to monitor access to the Proprietary Information and prevent any wrongful disclosures.

10.     On or about September 28, 2022, Palo Alto hired Mr. Trivedi as a Senior Vice President, US Strategics. As part of the consideration for his employment, Palo Alto required that Mr. Trivedi execute an Employee Invention Assignment and Confidentiality Agreement, which is attached hereto as Exhibit A. In his role, Mr. Trivedi was the leader of a sales team consisting of more than one hundred employees focused on selling to Palo Alto's largest customers. Mr. Trivedi was responsible for managing Palo Alto's relationship with, and generating sales to, its largest and highest-value customers, and was crucial to its success as a company. Accordingly, Palo Alto entrusted Mr. Trivedi with broad access to highly sensitive and extremely valuable Proprietary Information to perform his role.

11.     On or about March 20, 2023, Palo Alto hired Mr. Schumm as a Regional Vice President, Strategic Verticals. As part of the consideration for his employment, Palo Alto required that Mr. Schumm execute an Employee Invention Assignment and Confidentiality Agreement, which is attached hereto as Exhibit B (Exhibits A and B interchangeably, the "Confidentiality Agreement"). In his role, Mr. Schumm was a high-level manager who oversaw a regional sales team, and was intimately involved in managing Palo Alto's relationship with some of its largest US customers. As with Mr. Trivedi, Palo Alto entrusted Mr. Schumm with broad access to highly sensitive and extremely valuable Proprietary Information to perform his role.

12.     While Defendants were employed with Palo Alto, the Confidentiality Agreement prohibited them from "provid[ing] services to, or assist[ing] in any manner, any business or third party that competes with the current or planned business of" Palo Alto. Exhibit B ¶ 10. And during their employment, Defendants were also barred from "directly or indirectly solicit[ing] or

3

tak[ing] away suppliers or customers of [Palo Alto] if . . . information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law." Exhibit B ¶ 13.

13.     Further, during their employment with Palo Alto and for a period of one year thereafter, Defendants were and remain prohibited from "directly or indirectly solicit[ing] away employees or consultants of [Palo Alto] for [their] benefit or for the benefit of any other person or entity." Exhibit B ¶ 12.

14.     The Confidentiality Agreement requires that, upon termination of employment with PANW, Defendants "promptly deliver to [Palo Alto] any and all [Palo Alto] property, including but not limited to all documents, data, equipment and materials (whether tangible or electronic) of any nature pertaining to [their] work with" Palo Alto and, upon Palo Alto's request, "execute a document confirming [their] agreement to honor [their] responsibilities contained" in the Confidentiality Agreement. Exhibit B ¶ 9.

15.     Mr. Trivedi resigned, effective immediately, from Palo Alto on August 4, 2025. In the two months preceding his departure from Palo Alto, Mr. Trivedi downloaded several Palo Alto files to an unknown location outside of Palo Alto's computer systems, including a file summarizing account strategies for several of Palo Alto's strategic accounts. The files downloaded by Mr. Trivedi constitute Proprietary Information and could be used by a competitor to undermine Palo Alto's customer goodwill and, ultimately, Palo Alto's competitive standing in the cybersecurity marketplace.

16.     Mr. Schumm resigned, effective immediately, from Palo Alto on the same day as Mr. Trivedi, August 4, 2025. In the two months preceding his departure from Palo Alto, Mr. Schumm downloaded at least twenty-one files to a personal device, and eight additional files to an

ACTIVE 714500439v2

unknown location outside of Palo Alto's computer systems. The files Mr. Schumm downloaded included internal presentations and spreadsheets related to several strategic accounts. The files downloaded by Mr. Schumm constitute Proprietary Information and could be used by a competitor to undermine Palo Alto's customer goodwill and, ultimately, Palo Alto's competitive standing in the cybersecurity marketplace.

17. Palo Alto's review of Defendants' network activity leading up to their resignation is ongoing, and Palo Alto expects it will uncover additional information evincing Defendants' improper preparations to compete with Palo Alto while still under its employ.

18. On information and belief, both Defendants have accepted offers from, and will imminently begin employment with, Zscaler, Inc. ("Zscaler"). Zscaler also provides cybersecurity products and services to customers and is Palo Alto's direct competitor. On information and belief, both Defendants will join Zscaler as sales executives, performing substantially similar roles as they did while employed with Palo Alto.

19. On or about August 1, 2025, and a mere three days before Defendants concurrently informed Palo Alto of their immediate resignation, Mr. Schumm traveled to Naperville, Illinois, where Mr. Trivedi resides. On information and belief, Defendants met in person to finalize their coordinated resignation from Palo Alto, imminent employment with Zscaler, and solicitation of Palo Alto accounts and employees to Zscaler based, in part, on information procured and wrongfully retained during their employment with Palo Alto.

20. Upon learning of Defendants' post-termination possession of Proprietary Information, Palo Alto sent correspondence to both Defendants that reminded each of them of their obligations under the Confidentiality Agreement and applicable state trade secret law. The correspondence further requested that each Defendant promptly delete or otherwise destroy any

Proprietary Information retained and confirm the same to Palo Alto. Aside from coordinated, one-line responses confirming receipt of the correspondence, neither Defendant has cooperated with Palo Alto's specific requests nor acknowledged their post-termination obligations under the Confidentiality Agreement.

21. In sum, as of the filing of this Complaint, Defendants have refused to comply with their post-termination obligations under the Confidentiality Agreement, and their employment with a Palo Alto competitor risks inevitable and unlawful disclosure of the Proprietary Information and irreparable competitive harm to Palo Alto.

22. During the period between Defendants' coordinated resignation and the filing of this Complaint, at least two additional Palo Alto sales employees have resigned and stated their intention to commence work at Zscaler. On information and belief, and based, in part, on the timing of the resignations relative to Defendants' coordinated efforts, Defendants continue to actively solicit Palo Alto employees, including by using wrongfully retained Proprietary Information as an inducement. Accordingly, Palo Alto brings this action.

## COUNT I – Trade Secret Misappropriation
### Under the Illinois Trade Secrets Act, 765 ILCS 1065
*Against All Defendants*

23. Palo Alto repeats and re-alleges Paragraphs 1–22 of this Complaint as if fully set forth herein as Paragraph 22.

24. Palo Alto takes reasonable measures to protect the confidentiality of its Proprietary Information. These efforts include, but are not limited to, restricting employee access to the Proprietary Information, requiring passwords to access the Proprietary Information and requiring employees with access to sign standalone confidentiality agreements.

6

25.     Palo Alto derives actual and potential economic value from the Proprietary Information because it is not generally known to the public.  Palo Alto relies upon its sales strategies, pricing and marketing strategies, customer lists, and other business and financial information to effectively compete in the market for cybersecurity products and services.  If such information was publicly available or disclosed to a competitor, Palo Alto's ability to compete with other market participants would be thwarted.

26.     Accordingly, Defendants possess files and data constituting Palo Alto's trade secrets, and Defendants have knowledge of Palo Alto's trade secrets acquired during their employment with Palo Alto.

27.     Defendants' retention and use of Palo Alto's trade secrets in the course of their employment with Zscaler amounts to misappropriation, including because Defendants executed the Confidentiality Agreement, which imposes a duty to maintain the secrecy and limit the use of the Proprietary Information obtained during their employment with Palo Alto.

28.     Because Defendants will be employed by Zscaler in substantially similar roles as their employment with Palo Alto, and because Zscaler is Palo Alto's competitor in the market for cybersecurity products and services, Defendants' employment with Zscaler threatens an inevitable misappropriation of Palo Alto's trade secrets.

29.     Misappropriation of Palo Alto's trade secrets is presumptively irreparable, and the loss of Palo Alto's longstanding customer relationships and other damage to its customer goodwill cannot be remedied by a damages award because such harm is not quantitatively calculable.

30.     Injunctive relief establishing court-ordered safeguards to prevent the disclosure of Palo Alto's trade secrets by Defendants will not harm the parties or the public.

7

31.     Accordingly, temporary and permanent injunctive relief prohibiting Defendants from misappropriating Palo Alto's trade secrets is necessary to provide Palo Alto with complete relief.

WHEREFORE, Palo Alto respectfully requests that the Court enter judgment in its favor and against Defendants and grant it the following relief:

    a)  Restraining and enjoining Defendants, for a period of two years, from solicitation of business from any account on which Defendants worked while employed at Palo Alto;

    b)  Ordering Defendants to immediately return, delete, or otherwise destroy any and all of Palo Alto's Proprietary Information retained by Defendants after termination of their employment with Palo Alto;

    c)  Attorneys' fees and expenses;

    d)  Any other and further relief the Court deems equitable and just.

## COUNT II – Breach of Fiduciary Duty
### *Against All Defendants*

32.     Palo Alto repeats and re-alleges Paragraphs 1–22 of this Complaint as if fully set forth herein as Paragraph 32.

33.     While employed with Palo Alto, Defendants owed fiduciary duties to the company. Specifically, Defendants owed Palo Alto fiduciary duties of loyalty, which prohibited Defendants from acting inconsistently with their agency or trust and prohibited their solicitation of Palo Alto's employees or customers for Defendants' benefit.

34.     Defendants breached their fiduciary duties of loyalty by soliciting each other to resign from Palo Alto while employed at Palo Alto and in clear breach of their respective Confidentiality Agreements, accessing and improperly retaining Palo Alto's Proprietary

8

Information, and, on information and belief, taking deliberate steps to solicit Palo Alto's customers, all while still employed by Palo Alto. By actively promoting the interests of a competitor while still employed with Palo Alto, Defendants conduct goes beyond mere preparation to compete.

35.     Defendants' breaches of their fiduciary duties of loyalty have proximately caused injury to Palo Alto, including, but not limited to, loss of customer goodwill, personnel and reorganization costs, increased account maintenance costs, and information security expenses.

WHEREFORE, Palo Alto respectfully requests that the Court enter judgment in its favor and against Defendants and grant it the following relief:

        a) Compensatory damages for injuries to Palo Alto proximately caused by Defendants' breaches of their fiduciary duties of loyalty;

        b) Attorneys' fees and expenses;

        c) Any other and further relief the Court deems equitable and just.

### COUNT III – Breach of Contract
#### *Against Mr. Trivedi*

36.     Palo Alto repeats and re-alleges Paragraphs 1–22 of this Complaint as if fully set forth herein as Paragraph 36.

37.     On September 11, 2022, Palo Alto and Mr. Trivedi entered into the Confidentiality Agreement, which is a valid and enforceable contract.

38.     There was adequate consideration exchanged for the Confidentiality Agreement.

39.     Palo Alto performed all conditions, covenants, and promises required on its part pursuant to the Confidentiality Agreement.

40.     Mr. Trivedi breached the Confidentiality Agreement by, among other things, (1) soliciting Palo Alto employees while he was employed by Palo Alto, (2) exfiltrating and

9

wrongfully retaining Palo Alto's Proprietary Information after termination of his employment, (3) refusing to satisfy his post-termination obligations under the Confidentiality Agreement to execute a statement related to the Proprietary Information, and (4) using Palo Alto's Proprietary Information to solicit Palo Alto employees to resign from Palo Alto and accept employment at Zscaler.

41.     As a result of Mr. Trivedi's breaches of the Confidentiality Agreement, Palo Alto faces imminent and irreparable injury, including, but not limited to, loss of competitive standing due to misuse of the Proprietary Information, loss of key sales employees, and loss of customer relationships and goodwill. This injury cannot be redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Mr. Trivedi from violating the Confidentiality Agreement's covenants is necessary to provide Palo Alto with complete relief.

42.     Additionally, as a direct and proximate result of Mr. Trivedi's breaches of the Confidentiality Agreement, Palo Alto has already incurred substantial injury, including, but not limited to, personnel and reorganization costs, increased account maintenance costs, and information security expenses.

43.     Mr. Trivedi's conduct was and is willful and malicious.

WHEREFORE, Palo Alto respectfully requests that the Court enter judgment in its favor and against Mr. Trivedi and grant it the following relief:

      a) Restraining and enjoining Mr. Trivedi from soliciting, directly or indirectly, any employee or consultant of Palo Alto for a period of one year;

      b) Ordering Mr. Trivedi to execute a statement acknowledging and affirming the post-termination obligations related to Palo Alto's Proprietary Information set forth in the Confidentiality Agreement;

c) Ordering Mr. Trivedi to return, delete, or otherwise destroy any and all of Palo Alto's Proprietary Information retained by Mr. Trivedi after termination of his employment with Palo Alto;

d) Compensatory damages for actual losses incurred by Palo Alto due to Mr. Trivedi's breaches of the Confidentiality Agreement;

e) Punitive damages due to the willful and malicious nature of Mr. Trivedi's conduct;

f) Attorneys' fees and expenses;

g) Applicable interest and costs; and

h) Any other and further relief the Court deems equitable and just.

### COUNT IV – Breach of Contract
#### *Against Mr. Schumm*

44.     Palo Alto repeats and re-alleges Paragraphs 1–22 of this Complaint as if fully set forth herein as Paragraph 44.

45.     On February 27, 2023, Palo Alto and Mr. Schumm entered into the Confidentiality Agreement, which is a valid and enforceable contract.

46.     Palo Alto performed all conditions, covenants, and promises required on its part pursuant to the Confidentiality Agreement.

47.     There was adequate consideration exchanged for the Confidentiality Agreement.

48.     Mr. Schumm breached the Confidentiality Agreement by, among other things, (1) soliciting Palo Alto employees while he was employed with Palo Alto, (2) exfiltrating and wrongfully retaining Palo Alto's Proprietary Information after termination of his employment, (3) refusing to satisfy his post-termination obligations under the Confidentiality Agreement to execute a statement related to the Proprietary Information, and (4) using Palo Alto's Proprietary

ACTIVE 714500439v2

Information to solicit Palo Alto's employees to resign from Palo Alto and accept employment at Zscaler.

49.     As a result of Mr. Schumm's breaches of the Confidentiality Agreement, Palo Alto faces imminent and irreparable injury, including, but not limited to, loss of competitive standing due to misuse of the Proprietary Information, loss of key sales employees, and loss of customer relationships and goodwill. This injury cannot be redressed through damages alone. Accordingly, temporary and permanent injunctive relief prohibiting Mr. Schumm from violating the Confidentiality Agreement's covenants is necessary to provide Palo Alto with complete relief.

50.     Additionally, as a direct and proximate result of Mr. Schumm's breaches of the Confidentiality Agreement, Palo Alto has already incurred substantial injury, including, but not limited to, personnel and reorganization costs, increased account maintenance costs, and information security expenses.

51.     Mr. Schumm's conduct was and is willful and malicious.

WHEREFORE, Palo Alto respectfully requests that the Court enter judgment in its favor and against Mr. Schumm and grant it the following relief:

a) Restraining and enjoining Mr. Schumm from soliciting, directly or indirectly, any employee or consultant of Palo Alto for a period of one year;

b) Ordering Mr. Schumm to execute a statement acknowledging and affirming the post-termination obligations related to Palo Alto's Proprietary Information set forth in the Confidentiality Agreement;

c) Ordering Mr. Schumm to return, delete, or otherwise destroy any and all of Palo Alto's Proprietary Information retained by Mr. Trivedi after termination of his employment with Palo Alto;

12

d) Compensatory damages for actual losses incurred by Palo Alto due to Mr. Schumm's breaches of the Confidentiality Agreement;

e) Punitive damages due to the willful and malicious nature of Mr. Schumm' conduct;

f) Attorneys' fees and expenses;

g) Applicable interest and costs; and

h) Any other and further relief the Court deems equitable and just.

Dated: September 9, 2025

Respectfully Submitted,
Palo Alto Networks, Inc.

By:  */s/ Tiffany S. Fordyce*

Tiffany S. Fordyce
GREENBERG TRAURIG, LLP
360 North Green Street
Suite 1300
Chicago, IL 60607
Attorney Code No. 27725
Tel.: (312) 456-8400
Fax: (312) 456-8435
FordyceT@gtlaw.com

Peter S. Wahby (*pro hac* forthcoming)
Holmes H. Hampton (*pro hac* forthcoming)
Greenberg Traurig
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Tel.: (214) 665-3600
Fax: (214)665-3601
peter.wahby@gtlaw.com
holmes.hampton@gtlaw.com

13

# EXHIBIT A

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



## EMPLOYEE INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

In consideration of, and as a condition of my employment with Palo Alto Networks, Inc. (the "***Company***"), I agree with the Company as follows:

**1.** **Purpose of Agreement.** I understand that the Company is engaged in research, development, production, marketing, and sales in connection with its business and that it is critical for the Company to preserve and protect its "***Proprietary Information***" (as defined in Section 7 below), its rights in "***Inventions***" (as defined in Section 2 below) and in all related intellectual property rights. I am entering into this Employee Invention Assignment and Confidentiality Agreement (this "***Agreement***") as a condition of my employment with the Company, whether or not I am expected to create inventions of value for the Company.

**2.** **Disclosure of Inventions.** I will promptly disclose in confidence to the Company all inventions, improvements, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works and trade secrets that I make or conceive or first reduce to practice or create, either alone or jointly with others, during my employment, whether or not in the course of my employment, and whether or not patentable, copyrightable or protectable as trade secrets (the "***Inventions***").

**3.** **Work for Hire; Assignment of Inventions.** I acknowledge and agree that any copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. I agree that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Company, (ii) result from work performed by me for the Company, or (iii) relate to the Company's business or current or anticipated research and development (the "***Assigned Inventions***"), will be the sole and exclusive property of the Company and are hereby irrevocably assigned by me to the Company. Attached hereto as Exhibit A is a list describing all inventions, original works of authorship, developments and trade secrets which were made by me prior to the date of this Agreement, which belong to me and which are not assigned to the Company ("***Prior Inventions***"). I agree that if I use any of my Prior Inventions in the scope of my employment, or include them in any product or service of the Company, I hereby grant to the Company a perpetual, irrevocable, nonexclusive, world-wide, royalty-free license to use, disclose, make, sell, copy, distribute, modify and create works based on, perform or display such Prior Inventions and to sublicense third parties with the same rights. If no such list of Prior Inventions or Exhibit A is completed and/or attached hereto, I represent that I have no Prior Inventions at the time of signing this Agreement.

**4.** **Labor Code Section 2870 Notice.** I understand that Sections 3 and 5 of this Agreement do not apply to any Assigned Invention that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states:

> *ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED*

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



*ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.*

**5.** **Assignment of Other Rights.** In addition to the foregoing, I hereby irrevocably transfer and assign to the Company: (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights, including but not limited to rights in databases, in any Assigned Inventions, along with any registrations of or applications to register such rights; and (ii) any and all "Moral Rights" (as defined below) that I may have in or with respect to any Assigned Inventions. I also hereby forever waive any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "*Moral Rights*" mean any rights to claim authorship of or credit on an Assigned Invention, to object to or prevent the modification or destruction of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is referred to as a "moral right."

**6.** **Assistance.** I agree to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for the Company's Assigned Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. I appoint the Secretary of the Company as my attorney-in-fact to execute documents on my behalf for this purpose.

**7.** **Proprietary Information.** I understand that my employment by the Company creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to me by the Company or a third party that relates to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confidence (the "***Proprietary Information***"). Such Proprietary

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



Information includes, but is not limited to, Assigned Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and data, (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), domain names, software, developments, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, and other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property, or disclosed by any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confidence ("**Associated Third Parties**"). Notwithstanding the foregoing, Proprietary Information shall not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by the Company or Associated Third Parties to me; (ii) becomes publicly known or made generally available after disclosure by the Company or Associated Third Parties to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company or Associated Third Parties as shown by my then-contemporaneous written records; provided that any combination of individual items of information shall not be deemed to be within any of the foregoing exceptions merely because one or more of the individual items are within such exception, unless the combination as a whole is within such exception. I understand that nothing in this Agreement is intended to limit my rights to discuss the terms, wages, and working conditions of my employment, as protected by applicable law. In addition, nothing in this agreement prevents me from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that I have reason to believe is unlawful.

**8.** **Confidentiality.** At all times, both during my employment and after its termination, I will keep and hold all such Proprietary Information in strict confidence and trust. I will not use or disclose any Proprietary Information without the prior written consent of the General Counsel, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company. I understand, however, that nothing in this Agreement limits my ability to testify in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged sexual harassment if I have been required or requested to attend the proceeding pursuant to a court order, subpoena, or written request from an administrative agency or the legislature. I further understand that nothing in this Agreement prohibits me from communicating with, or responding to any inquiry from, or providing testimony before, any state or federal regulatory agencies with regard to such information without first obtaining permission from the Company. However, I agree to notify such agency of the confidential nature of the information provided and request that necessary steps be taken to maintain its confidentiality. I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product. In addition, I hereby acknowledge that the Company has provided me with notice in compliance with the Defend Trade Secrets Act of 2016 regarding immunity from liability for limited disclosures of trade secrets. The full text of the notice is attached in <u>Exhibit B</u>.

**9.** **Return of Proprietary Information and Other Company Property.** Upon termination

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



of my employment with the Company, or upon earlier request by the Company, I will promptly deliver to the Company any and all Company property, including but not limited to all documents, data, equipment and materials (whether tangible or electronic) of any nature pertaining to my work with the Company and, upon Company request, will execute a document confirming my agreement to honor my responsibilities contained in this Agreement. Upon termination of my employment with the Company, I will not take with me or retain any Company property, including but not limited to any documents, data, equipment or materials or copies thereof containing any Proprietary Information.

**9.** **No Breach of Prior Agreement.** I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality or similar agreement with any former employer or other party. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company.

**10.** **Efforts; Duty Not to Compete.** I understand that my employment with the Company requires my undivided attention and effort during normal business hours. While I am employed by the Company, I will not provide services to, or assist in any manner, any business or third party that competes with the current or planned business of the Company, nor will I, without the prior written approval of (i) an officer of the Company if I am not an executive officer of the Company, or (ii) the Board of Directors of the Company if I am an executive officer of the Company, engage in any other professional employment or consulting.

**11.** **Notification.** I hereby authorize the Company to notify third parties, including, without limitation, customers and actual or potential employers, of the terms of this Agreement and my responsibilities hereunder.

**12.** **Non-Solicitation of Employees/Consultants.** During my employment and for a period of one (1) year thereafter, I will not directly or indirectly solicit away employees or consultants of the Company for my benefit or for the benefit of any other person or entity.

**13.** **Non-Solicitation of Suppliers/Customers.** During my employment with the Company and after termination of my employment, I will not directly or indirectly solicit or take away suppliers or customers of the Company if the identity of the supplier or customer or information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law.

**14.** **Injunctive Relief.** I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement.

**15.** **Governing Law; Severability.** This Agreement will be governed by and construed in accordance with the laws of the state in which I am employed. If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid,

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**16.** **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

**17.** **Entire Agreement.** This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

**18.** **Amendment and Waivers.** This Agreement may be amended only by a written agreement executed by each of the parties hereto. No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought. Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns. No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance. No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**19.** **Successors and Assigns; Assignment.** Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives. The Company may assign any of its rights and obligations under this Agreement. No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

**20.** **Further Assurances.** The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**21.** **"At Will" Employment.** I understand that this Agreement does not constitute a contract of employment or obligate the Company to employ me for any stated period of time. I understand that I am an "at will" employee of the Company and that my employment can be terminated at any time, with or without notice and with or without cause, for any reason or for no reason, by either the Company or myself. I acknowledge that any statements or representations to the contrary are ineffective, unless put into a writing signed by the Company. I further acknowledge that my participation in any stock option or benefit

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



program is not to be construed as any assurance of continuing employment for any particular period of time. This Agreement shall be effective as of the first day of my employment by the Company.

I

*keyur Trivedi*

_____
Signature

Keyur Trivedi

_____
Name (please print)

9/11/2022 | 15:47 PDT

_____
Date

DocuSign Envelope ID: D0517809-1FAE-49ED-8E21-CCD49CBC4FB0



**EXHIBIT B**

**<u>Notice Under the Defend Trade Secrets Act of 2016</u>**

*An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.*

# EXHIBIT B

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



## EMPLOYEE INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

In consideration of, and as a condition of my employment with Palo Alto Networks, Inc. (the "**Company**"), I agree with the Company as follows:

**1.** **Purpose of Agreement.** I understand that the Company is engaged in research, development, production, marketing, and sales in connection with its business and that it is critical for the Company to preserve and protect its "**Proprietary Information**" (as defined in Section 7 below), its rights in "**Inventions**" (as defined in Section 2 below) and in all related intellectual property rights. I am entering into this Employee Invention Assignment and Confidentiality Agreement (this "**Agreement**") as a condition of my employment with the Company, whether or not I am expected to create inventions of value for the Company.

**2.** **Disclosure of Inventions.** I will promptly disclose in confidence to the Company all inventions, improvements, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works and trade secrets that I make or conceive or first reduce to practice or create, either alone or jointly with others, during my employment, whether or not in the course of my employment, and whether or not patentable, copyrightable or protectable as trade secrets (the "**Inventions**").

**3.** **Work for Hire; Assignment of Inventions.** I acknowledge and agree that any copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. I agree that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Company, (ii) result from work performed by me for the Company, or (iii) relate to the Company's business or current or anticipated research and development (the "**Assigned Inventions**"), will be the sole and exclusive property of the Company and are hereby irrevocably assigned by me to the Company. Attached hereto as Exhibit A is a list describing all inventions, original works of authorship, developments and trade secrets which were made by me prior to the date of this Agreement, which belong to me and which are not assigned to the Company ("**Prior Inventions**"). I agree that if I use any of my Prior Inventions in the scope of my employment, or include them in any product or service of the Company, I hereby grant to the Company a perpetual, irrevocable, nonexclusive, world-wide, royalty-free license to use, disclose, make, sell, copy, distribute, modify and create works based on, perform or display such Prior Inventions and to sublicense third parties with the same rights. If no such list of Prior Inventions or Exhibit A is completed and/or attached hereto, I represent that I have no Prior Inventions at the time of signing this Agreement.

**4.** **Labor Code Section 2870 Notice.** I understand that Sections 3 and 5 of this Agreement do not apply to any Assigned Invention that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states:

*ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED*

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



*ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.*

**5.** **Assignment of Other Rights.** In addition to the foregoing, I hereby irrevocably transfer and assign to the Company: (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights, including but not limited to rights in databases, in any Assigned Inventions, along with any registrations of or applications to register such rights; and (ii) any and all "Moral Rights" (as defined below) that I may have in or with respect to any Assigned Inventions. I also hereby forever waive any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "*Moral Rights*" mean any rights to claim authorship of or credit on an Assigned Invention, to object to or prevent the modification or destruction of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions or Prior Inventions licensed to Company under Section 3, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is referred to as a "moral right."

**6.** **Assistance.** I agree to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for the Company's Assigned Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. I appoint the Secretary of the Company as my attorney-in-fact to execute documents on my behalf for this purpose.

**7.** **Proprietary Information.** I understand that my employment by the Company creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to me by the Company or a third party that relates to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confidence (the "***Proprietary Information***"). Such Proprietary

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



Information includes, but is not limited to, Assigned Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and data, (including, but not limited to, customers of the Company on which I called or with which I may become acquainted during the term of my employment), domain names, software, developments, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, and other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property, or disclosed by any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confidence ("**Associated Third Parties**"). Notwithstanding the foregoing, Proprietary Information shall not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by the Company or Associated Third Parties to me; (ii) becomes publicly known or made generally available after disclosure by the Company or Associated Third Parties to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company or Associated Third Parties as shown by my then-contemporaneous written records; provided that any combination of individual items of information shall not be deemed to be within any of the foregoing exceptions merely because one or more of the individual items are within such exception, unless the combination as a whole is within such exception. I understand that nothing in this Agreement is intended to limit my rights to discuss the terms, wages, and working conditions of my employment, as protected by applicable law. In addition, nothing in this agreement prevents me from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that I have reason to believe is unlawful.

**8.**     **Confidentiality.** At all times, both during my employment and after its termination, I will keep and hold all such Proprietary Information in strict confidence and trust. I will not use or disclose any Proprietary Information without the prior written consent of the General Counsel, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company. I understand, however, that nothing in this Agreement limits my ability to testify in an administrative, legislative, or judicial proceeding concerning alleged criminal conduct or alleged sexual harassment if I have been required or requested to attend the proceeding pursuant to a court order, subpoena, or written request from an administrative agency or the legislature. I further understand that nothing in this Agreement prohibits me from communicating with, or responding to any inquiry from, or providing testimony before, any state or federal regulatory agencies with regard to such information without first obtaining permission from the Company. However, I agree to notify such agency of the confidential nature of the information provided and request that necessary steps be taken to maintain its confidentiality. I further understand that I am not permitted to disclose the Company's attorney-client privileged communications or attorney work product. In addition, I hereby acknowledge that the Company has provided me with notice in compliance with the Defend Trade Secrets Act of 2016 regarding immunity from liability for limited disclosures of trade secrets. The full text of the notice is attached in Exhibit B.

**9.**     **Return of Proprietary Information and Other Company Property.** Upon termination

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



of my employment with the Company, or upon earlier request by the Company, I will promptly deliver to the Company any and all Company property, including but not limited to all documents, data, equipment and materials (whether tangible or electronic) of any nature pertaining to my work with the Company and, upon Company request, will execute a document confirming my agreement to honor my responsibilities contained in this Agreement.  Upon termination of my employment with the Company, I will not take with me or retain any Company property, including but not limited to any documents, data, equipment or materials or copies thereof containing any Proprietary Information.

**9.**  **No Breach of Prior Agreement.**  I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information, confidentiality or similar agreement with any former employer or other party.  I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company.

**10.**  **Efforts; Duty Not to Compete.**  I understand that my employment with the Company requires my undivided attention and effort during normal business hours.  While I am employed by the Company, I will not provide services to, or assist in any manner, any business or third party that competes with the current or planned business of the Company, nor will I, without the prior written approval of (i) an officer of the Company if I am not an executive officer of the Company, or (ii) the Board of Directors of the Company if I am an executive officer of the Company, engage in any other professional employment or consulting.

**11.**  **Notification.**  I hereby authorize the Company to notify third parties, including, without limitation, customers and actual or potential employers, of the terms of this Agreement and my responsibilities hereunder.

**12.**  **Non-Solicitation of Employees/Consultants.**  During my employment and for a period of one (1) year thereafter, I will not directly or indirectly solicit away employees or consultants of the Company for my benefit or for the benefit of any other person or entity.

**13.**  **Non-Solicitation of Suppliers/Customers.**  During my employment with the Company and after termination of my employment, I will not directly or indirectly solicit or take away suppliers or customers of the Company if the identity of the supplier or customer or information about the supplier or customer relationship is a trade secret or is otherwise deemed confidential information within the meaning of California law.

**14.**  **Injunctive Relief.**  I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement.

**15.**  **Governing Law; Severability.**  This Agreement will be governed by and construed in accordance with the laws of the state in which I am employed.  If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid,

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto.  If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder of this Agreement shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in this Agreement.

**16.**   **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all of which together shall constitute one and the same agreement.

**17.**   **Entire Agreement.**  This Agreement and the documents referred to herein constitute the entire agreement and understanding of the parties with respect to the subject matter of this Agreement, and supersede all prior understandings and agreements, whether oral or written, between or among the parties hereto with respect to the specific subject matter hereof.

**18.**   **Amendment and Waivers.**  This Agreement may be amended only by a written agreement executed by each of the parties hereto.  No amendment of or waiver of, or modification of any obligation under this Agreement will be enforceable unless set forth in a writing signed by the party against which enforcement is sought.  Any amendment effected in accordance with this section will be binding upon all parties hereto and each of their respective successors and assigns.  No delay or failure to require performance of any provision of this Agreement shall constitute a waiver of that provision as to that or any other instance.  No waiver granted under this Agreement as to any one provision herein shall constitute a subsequent waiver of such provision or of any other provision herein, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

**19.**   **Successors and Assigns; Assignment.**  Except as otherwise provided in this Agreement, this Agreement, and the rights and obligations of the parties hereunder, will be binding upon and inure to the benefit of their respective successors, assigns, heirs, executors, administrators and legal representatives.  The Company may assign any of its rights and obligations under this Agreement.  No other party to this Agreement may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, except with the prior written consent of the Company.

**20.**   **Further Assurances.**  The parties agree to execute such further documents and instruments and to take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

**21.**   **"At Will" Employment.**  I understand that this Agreement does not constitute a contract of employment or obligate the Company to employ me for any stated period of time.  I understand that I am an "at will" employee of the Company and that my employment can be terminated at any time, with or without notice and with or without cause, for any reason or for no reason, by either the Company or myself.  I acknowledge that any statements or representations to the contrary are ineffective, unless put into a writing signed by the Company.  I further acknowledge that my participation in any stock option or benefit

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



program is not to be construed as any assurance of continuing employment for any particular period of time.  This Agreement shall be effective as of the first day of my employment by the Company.

I

*Christopher Schumm*

_____
Signature

_____
Name (please print)

Christopher Schumm

2/27/2023 | 19:44 EST

_____
Date

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



**EXHIBIT A**

**SCHEDULE OF PRIOR INVENTIONS**

1.      The following is a complete list of all Prior Inventions relevant to the subject matter of my employment by the Company that have been made or discovered or conceived or first reduced to practice by me or jointly with others prior to my employment by the Company that I desire to remove from the operation of the Company's Employee Invention Assignment and Confidentiality Agreement:

           **X**       No inventions or improvements.

           \_       Additional sheets attached.

           \_       See below:

2.      I propose to bring to my employment the following materials and documents of a former employer:

           **X**       No materials or documents.

           \_       Additional sheets attached.

           \_       See below:

**Employee:**

*Christopher Schumm*

Signature

__Christopher Schumm__

Name (please print)

__2/27/2023 | 19:44 EST__

Date

DocuSign Envelope ID: 47EE4FB1-55E8-448A-A503-1F652320535A



**EXHIBIT B**

**Notice Under the Defend Trade Secrets Act of 2016**

*An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.*